UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRENDA TACKETT,

       Plaintiff,

v.                                 Case No. 2:20-cv-16-FtM-66NPM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## REPORT AND RECOMMENDATION

Brenda Tackett seeks judicial review of a denial of Social Security disability insurance benefits. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 21). As discussed in this report, the decision of the Commissioner should be affirmed.

## I.    Eligibility for Disability Benefits and the ALJ's Decision

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

---

[1] Cited as "Tr." followed by the appropriate page number.

expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.[2] The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.[3]

### B.    Factual and procedural history

Tackett was born in November 1960, received a GED, and last worked as a cashier and a server. (Tr. 19, 59, 76). On April 20, 2016, Tackett applied for disability benefits and on June 29, 2016, she applied for supplemental security income. (Tr. 100, 101, 168-171). Tackett asserted an onset date of January 1, 2015. (Tr. 170). Her applications were administratively denied initially on August 5, 2016, and upon reconsideration on September 29, 2016. (Tr. 129, 130).

At Tackett's request, Administrative Law Judge Ryan Johannes ("ALJ") held a hearing on August 9, 2018, concerning the denial of disability benefits. (Tr. 50-75). The ALJ issued a decision on February 15, 2019, finding Tackett not disabled from the alleged onset date through the date of decision. (Tr. 10-20).

On November 18, 2019, the administration's Appeals Council denied Tackett's request for review. (Tr. 1-5). Tackett then filed a Complaint on January 10, 2020, and the case is ripe for review.

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### C.     The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015); (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, the administration's hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298,

1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *Id.* at 1359; *see also* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Tackett last met the insured status requirements through December 31, 2020. At step one of the evaluation, the ALJ found Tackett had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ characterized Tackett's severe impairments as: chronic obstructive pulmonary disease (COPD), back pain, and neck pain. At step three, the ALJ

determined Tackett did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 12-14).

As a predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except the claimant can occasionally climb stairs and ramps, but can never climb ladders and scaffolds. The claimant can occasionally stoop but never crawl. The claimant must avoid concentrated exposure to pulmonary irritants and avoid all unprotected heights. The claimant can have occasional exposure to moving mechanical parts.

(Tr. 14). Consequently, the ALJ determined Tackett was capable of performing her past relevant work as a cashier and as a server as actually and generally performed. The ALJ concluded Tackett was not under a disability from January 1, 2015, through the date of the decision. (Tr. 20).

## II.   Analysis

Tackett's appeal presents the following issues:

(1)   Whether Tackett knowingly and voluntarily waived her right to be represented before the ALJ.

(2)   Whether Tackett was unfairly prejudiced by not having an adequate opportunity to examine the evidence prior to the administrative hearing.

(3)   Whether the ALJ properly weighed the opinions of Dr. Owen and Licensed Clinical Social Worker ("LCSW") Hughes.

(4)   Whether the ALJ insufficiently developed the record by failing to order a neurological examination.

(5)     Whether the ALJ erred by failing to find Tackett had a severe mental impairment and by failing to include relevant limitations in the RFC and the hypothetical questions presented to the vocational expert.

(6)     Whether the ALJ erred by failing to provide for a sit/stand option in the RFC.

(7)     Whether the ALJ erred by finding Tackett able to perform light work with certain limitations.

(Doc. 21, pp. 14-15, 23, 33-34, 44, 46).

## A.     Standard of review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. §

405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    The right to representation at, and the fairness of, the ALJ hearing**

   *1.    Right to representation*

Implicitly contending that she did not knowingly and voluntarily waive her right to be represented during the hearing before the ALJ, Tackett asserts the ALJ should have done something more to have some form of representation for her at the hearing. (Doc. 21, pp. 15-16). The Eleventh Circuit has long recognized that "'[a] Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ.'" *Reynolds v. Soc. Sec. Admin.*, 679 F. App'x 826, 827 (11th Cir. 2017) (quoting *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). As such, the Commissioner has a duty to notify a claimant in writing about the options for obtaining a lawyer or representative, and must include that a legal services organization may provide legal services free of charge. *Id.* (citing 42 U.S.C. § 406(c)). If a claimant is not properly informed of her right to representation, either in a prehearing notice or at the hearing, a claimant cannot

knowingly and intelligently waive her statutory right to counsel or representation. *Id.* at 827-828 (citing *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982)).

Here, Tackett was and remains well aware of her right to representation as evinced by her being represented during the initial and reconsideration stages of her claim (Tr. 132-133), during the Appeals Council proceeding, and before this Court. (Tr. 256-261). And Tackett was sent several notices at various stages of the administrative proceeding about her right to be represented. (Tr. 138, 141, 147, 153). Even in her "Request for Hearing by Administrative Law Judge," Tackett acknowledged: "I UNDERSTAND I HAVE A RIGHT TO BE REPRESENTED AND THAT IF I NEED REPRESENTATION, THE SOCIAL SECURITY OFFICE OR HEARING OFFICE CAN GIVE ME A LIST OF LEGAL REFERRAL AND SERVICE ORGANIZATIONS TO ASSIST ME IN LOCATING A REPRESENTATIVE." (Tr. 158).[4]

Prior to the hearing, Tackett notified the Commissioner that she was no longer represented and stated, "so I officially am representing myself." (Tr. 159). On the same date as the hearing, Tackett signed a Waiver of Right to Representation.

---

[4] While Tackett argues that in a letter and a Disability Report she indicated her desire to be represented (Doc. 21, p. 15), neither document indicates such a desire. The first simply informs the agency that Tackett is representing herself (Tr. 159) and the second directs the agency not to pay her prior attorney because the attorney no longer handles Social Security cases and passed Tackett's name to a lawyer who never contacted her. (Doc. 21, p. 15). The language in the documents does not support any suggestion that Tackett requested the administration's assistance for securing counsel.

Among other things, Tackett acknowledged in the waiver that: she had the right to be represented by an attorney or non-attorney; a representative could help with obtaining information about the claim; a representative could present the evidence in the most favorable way; the representative could not charge a fee unless approved by the Social Security Administration; and, some legal organizations offer free legal representation. Tackett responded that she understood her rights to representation and she wished to proceed without representation. (Tr. 163).

Finally, at the beginning of the hearing, the ALJ reiterated the language in the Waiver of Right to Representation. The ALJ asked Tackett if she understood her rights and she responded, "yes." The ALJ specifically asked Tackett if she wanted to proceed without a representative and she responded, "yes." The ALJ repeated, "Okay. You stated you understand your rights and want to proceed without a representative?" And again, Tackett responded, "yes." (Tr. 53-54). There is nothing in the record to suggest that Tackett did not understand either her rights or her waiver of them, and the waiver should be found knowingly and voluntarily made. In short, Tackett elected—as was her right—to proceed pro se before the ALJ.

### 2.    *Fairness of the ALJ hearing*

At the hearing, the ALJ asked Tackett if she had the opportunity to review the record and she responded: "What record?" The ALJ clarified that a CD was sent to Tackett, but apparently she had not received it prior to the hearing. In fact, Tackett

was given a copy of the CD on the date of the hearing. (Tr. 55). By not being able to review the administrative record prior to the hearing, Tackett contends, in essence, a due process violation occurred. As Tackett frames the issue, the ALJ failed "to ensure Plaintiff had *a meaningful opportunity to review* the exhibits."). (Doc. 21, p. 18).

The touchstones of due process are notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). But as a threshold matter, "[t]here must be a showing of prejudice before we will determine that a social security claimant's due process rights have been violated to such a degree that the case must be remanded to the Commissioner for development of the record." *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam)).

First, there is no dispute that Tackett did not receive a copy of the CD containing the medical records in evidence in sufficient time before the hearing to review them. (Tr. 55-56). She claims this resulted in an unfair process. (Doc. 21, p. 16-17). But Tackett does not substantiate any prejudice. She does not suggest that anything on the CD was false, incomplete, or should not have been considered. There is no suggestion Tackett would have done anything differently during the hearing if the CD had been in her hands sometime sooner. In short, Tackett does not offer any rationale for a potential finding that an earlier delivery of the CD could have altered

10

the outcome in any way.[7] With no showing of prejudice concerning the way the proceeding was handled, any error does not warrant remand. *McCabe*, 661 F. App'x at 599.

## C. The ALJ's assignment of weight to certain opinions and development of the record

### 1. *Weight of Dr. Owen's and LCSW Hughes's opinions*

Tackett challenges the ALJ's reasons for affording only partial weight to Dr. Owen's opinion and for not crediting LCSW Hughes's evaluation and opinion. (Doc. 21, pp. 34-39). Whenever a physician offers a medical opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

---

[7] Notably, the ALJ conducted the hearing in August 2018 and did not issue a ruling until February 2019. Tackett received a CD of the record evidence in August 2018 for review. There is no indication once armed with the CD, Tackett provided comments or information about the record evidence to the ALJ before decision was issued. Moreover, Tackett had the opportunity but did not raise this issue when she sought review of the ALJ's decision by the administration's Appeals Council (Tr. 256-261). Nor is there any indication that Plaintiff made any request of the ALJ to reopen or revise his decision on this basis. *See* 20 C.F.R. § 404.961 ("The administrative law judge may decide . . . at the request of any party to the hearing to hold a . . . post hearing conference to facilitate the hearing or the hearing decision."); 20 C.F.R. § 404.987(b) ("[Y]ou may ask that a final determination or decision to which you were a party be reopened."). Thus, Tackett has not stated a colorable due process claim. *Cf. Kiiker v. Astrue*, 364 F. App'x 408, 409 (10th Cir. 2010) (Gorsuch, J.) (holding claimant did not state a colorable due process violation because he did not avail himself of the opportunities to request the ALJ revisit his decision or the Appeals Council review it).

1178-1179 (11th Cir. 2011); 20 C.F.R. § 404.1527(a)(1). [8] Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

When determining whether a plaintiff is disabled, the ALJ will consider the medical opinions of record in combination with all the relevant evidence. *Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017) (citing 20 C.F.R. § 404.1527(b)). In addition to medical sources such as physicians, evidence from "other sources" may be used to show the severity of an impairment and how it affects a plaintiff's ability to work. *Id.* But only evidence from acceptable medical sources may establish the existence of a medically determinable impairment, and only acceptable medical sources can render medical opinions or be considered treating sources whose medical opinions may be entitled to controlling weight. *Id.*

With respect to applications filed before March 27, 2017, an ALJ must consider several factors when assigning weight to medical opinions. 20 C.F.R. §404.1527(c). "For instance, the Social Security regulations command that the ALJ consider: (1) the examining relationship; (2) the treatment relationship, including the

---

[8] For claims filed on or after March 27, 2017, the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work and adapt to work-related conditions. *See* 20 C.F.R. § 404.1513(a)(2).

length and nature of the treatment relationship; (3) whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

### a.    Dr. Owen's opinion

Tackett contends the ALJ should have given more weight to certain functional-limitation opinions of Dr. Owen concerning a purported need for her RFC to include additional sit, stand and walking limitations and a limitation concerning reaching/handling/fingering. (Doc. 21, p. 34).

At the end the hearing, the ALJ said he was going to order consultative exams because it had been over two years since Tackett had been to a consultative exam. (Tr. 74). As a result, James Owen, M.D. conducted a one-time consultative evaluation of Tackett on September 27, 2018. (Tr. 454-465). As a one-time evaluator, his opinion is not entitled to any special deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). Even so, the ALJ summarized Dr. Owen's findings. (Tr. 17-18). In sum, Dr. Owen found Tackett suffered from COPD, chest pain "[e]pisode of unknown etiology, [and] mild hypertension." (Tr. 456). Dr.

Owen also noted a "[r]eview of systems is possible for chronic fatigue, [9] nervousness, depression, memory loss, mental illness, shortness of breath," but did not diagnose Tackett with chronic fatigue or any mental health disorder. Dr. Owen observed Tackett getting on and off the exam table and walking in and out of the room without difficulty, and observed her having normal gait and station. (Tr. 455).

As to Dr. Owen's opinion, the ALJ made the following determination:

> The undersigned gives partial weight to the opinion of consultative examiner Dr. Frank Owen, who opined that the claimant could lift and carry up to 10 pounds frequently and up to 50 pounds occasionally, but could only sit for 6 hours and stand and walk for 2 hours. Additionally, Dr. Owen found that the claimant could frequently reach, handle and finger, push and pull. Moreover, he found that the claimant could never climb ladders, ropes or scaffolds, but could frequently climb stairs and occasionally balance, stoop, kneel, crouch and crawl. Dr. Owen's opinion was not persuasive or consistent with his examination. There was nothing [in] the examination that would support limiting the claimant's reaching, handling, fingering, walking, standing, and use of foot controls. As Dr. Owen noted the claimant was able to get on and off the table and in and out of the room without difficulty. A heel and toe walk, Romberg, Tandem, piriformis were all negative. Additionally, the claimant's ranges of motions were minimally affected. Thus, the undersigned gives this opinion partial weight (Exhibit 8F).

(Tr. 19).

---

[9] The ALJ had no obligation to address Dr. Owen's mention of chronic fatigue. Chronic fatigue was mentioned in a review of systems provided by Tackett. Dr. Owen did not diagnose Tackett with this disease. (Tr. 455). To be considered a medically determinable impairment, a plaintiff must not only have a diagnosis for chronic fatigue from a physician but other measures that comply with the regulations. *See* SSR 14-1p, 2014 WL 1371245, at *4-5 ("[SSA] will find that a person has an MDI [medically determinable impairment] of CFS [chronic fatigue syndrome] if a licensed physician diagnosed CFS . . ."). A patient's subjective complaint is not sufficient.

The ALJ found Dr. Owen's evaluation did not support the extreme limitations in his Medical Source Statement. The ALJ pointed to specific instances in Dr. Owen's evaluation concerning walking, standing, and fingering that did not support Dr. Owen's opinion. (Tr. 460-465). The ALJ did not substitute his opinion for that of Dr. Owen, but instead reviewed Dr. Owen's evaluation, compared it to Dr. Owen's opinion, and found the evaluation did not support the extreme limitations in the opinion. Moreover, as to reaching/handling/fingering, Tackett did not include any complaints as to these limitations in her application or at the hearing. (*See, e.g.*, Tr. 63, 185). In fact, not only does she do laundry, but she hangs clothes on a line to dry with no complaint. (Tr. 68, 70).

While a physician's opinion about what a plaintiff can or cannot do will be considered, such opinions are not dispositive because the responsibility to assess a plaintiff's RFC is reserved to the ALJ. 20 C.F.R. §§ 404.1513(a), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); *see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012). And the Court is "not to second guess an ALJ's decision about the weight medical opinions deserve so long as the ALJ articulates a specific justification for his decision." *Walker v. Comm'r, Soc. Sec. Admin.*, No. 20-11671, 2020 WL 7040957, *4 (11th Cir. Dec. 1, 2020) (citations omitted). The ALJ articulated specific justification for his decision to afford partial weight to Dr. Owen's opinion, and the assignment of partial weight is supported by substantial

evidence.

### b.    LCSW Hughes's opinion

Tackett asserts the ALJ erred by not referencing or weighing the "opinions" of Janice Hughes,[10] who is a licensed clinical social worker with a doctorate in education. (Doc. 21, pp. 34, 37; Tr. 277).[11] LCSW Hughes opined that Tackett might have PTSD, ADHD, or neurocognitive impairments and that Tackett should be evaluated by a neurologist. (Tr. 262-273, 277-288). While the ALJ found Tackett had medically determinable ADHD and PTSD that constituted mild impairments and did not impose any functional limits, he was not required to discuss or ascribe any weight at all to Hughes's opinions because she was not, pursuant to the applicable regulations, an acceptable medical source. (Tr. 13). *See* 20 C.F.R. § 404.1513(a) (2016); *Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017).

As the Eleventh Circuit recently reasoned in *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 872 (11th Cir. 2020):

> While the ALJ must state with particularity the weight given to different   medical   opinions   and   the   supporting   reasons,

---

[10] Tackett's counsel should not have advanced the false and misleading characterization—no less than twice—in the brief submitted to the Court that Hughes is a "psychologist." Hughes is a social worker and she does not appear to have any degree in psychology.

[11] Among Hughes's recommendations was that Tackett consult with a neurologist, seek psychotherapy and medication for PTSD, and apply for Social Security disability. Tackett filed her application for disability insurance benefits one month later. (Tr. 10, 288).

> *Winschel*, 631 F.3d at 1179, nurse practitioners and licensed
> clinical social workers are not 'acceptable medical sources'
> under the regulations. *See* 20 C.F.R. §§ 404.1513(a),
> 416.913(a). As 'other sources,' they cannot establish the
> existence of a medically determinable impairment, produce
> medical opinions, or be considered treating sources. SSR 06-
> 3p, 71 Fed. Reg. 45,593-03 (Aug. 9, 2006).

*Id..* An ALJ may nevertheless consider evidence from other medical sources and

the ALJ's decision contains a citation to Hughes's evaluation (Tr. 13). In Hughes's

evaluation, she offered diagnoses for Tackett but did not opine as to how Tackett's

impairments affect her ability to function.[12]  For this additional reason, the ALJ was

under no obligation to discuss or weigh Hughes's opinion, and the ALJ did not err

by not assigning weight to this opinion. *See Banks for Hunter v. Comm'r, Soc. Sec.

Admin.*, 686 F. App'x 706, 711 (11th Cir. 2017) (finding the ALJ did not err in

failing to discuss an opinion that was "vague, conclusory, and failed to explain the

type of marked functional limitation" the plaintiff experienced).

### 2.   *Whether a neurological consult should have been ordered*

Tackett argues the ALJ failed to adequately develop the record by not ordering

a consultative neurological examination as recommended by LCSW Hughes. (Doc.

21, pp. 16-18).[13]  But an ALJ "'is not required to order a consultative examination

---

[12]  Even if LCSW Hughes was an acceptable medical source—which she is not—her evaluations
contain vague and general statements concerning the impacts of ADHD and PTSD, and do not
find, much less support, any functional limitations.

[13]  While an ALJ typically has a heightened duty to develop the record when a claimant is
proceeding pro se, the ALJ was under no such heightened duty here because Tackett expressly

as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.'" *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007)).[14] And a court will remand for further factual development of the record only when the record contains evidentiary gaps that result in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Henry*, 802 F.3d at 1267). The recommendation from an unacceptable source, such as Hughes, that a claimant be examined by a neurologist does not, by itself, create an evidentiary gap in the record.

Nor has Plaintiff shown any evidentiary gaps in the record warranting an additional consultative examination. In fact, the ALJ ordered two consultative examinations (Dr. Owen, an orthopedist (Tr. 454-456); and Dr. Cheryl Kasprzak, a psychologist (Tr. 445-452)) after the administrative hearing, one of which was a general clinical evaluation with mental status examination. As discussed more fully later, consultative examiner Dr. Kasprzak completed a Disability Evaluation and a Medial Source Statement of Ability To Do Work-Related Activities (Mental). The evaluation included a review of medical records, general observations, a history

---

waived counsel. *See Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) ("where counsel has been waived, the special duty to develop the record does not take effect.").

[14] *See* 20 C.F.R. § 404.1519a (explaining reasons why an ALJ may order a consultative examination, such as for clinical findings, laboratory tests, a diagnosis, or prognosis).

provided by Tackett, a mental status examination, a Structured Inventory of Malingered Symptomatology (SIMS) Test and interpretation, and a work-related assessment of activities. (Tr. 445-452). In addition, state agency consultants John Thibodeau, Ph.D. and Maryann Wharry, Psy.D.[15] reviewed the record and opined as to Tackett's mental abilities. (Tr. 81-82, 109-110). As to Tackett's mental-work capabilities, the ALJ had sufficient records with no evidentiary gaps. "Therefore, it is pure speculation that a consultative examination would support the plaintiff's allegations of disability." *Correa v. Colvin*, No. 8:15-CV-461-T-TGW, 2016 WL 7334642, at \*5 (M.D. Fla. Mar. 18, 2016).

### D.    Determining severity of any mental impairments at step two

Tackett argues the ALJ should have found her mental impairments severe rather than finding them non-severe, although medically determinable. (Doc. 21, p. 23). Even if non-severe, Tackett contends the ALJ should have included limitations from the mental impairments in both the RFC and in the hypothetical to the vocational expert. (*Id.*). In the decision, the ALJ found Tackett's mental impairments of an organic mental disorder, adjustment disorder mixed with anxiety and depressed mood, attention-deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD) did not cause more than minimal limitations in Tackett's ability to

---

[15] The ALJ gave partial weight to Drs. Thibodeau and Wharry's opinions, but only due to a change in regulations for the Mental Listings "B" criteria and for no other reason, such as a conflict with other evidence of record. (Tr. 19).

perform basic mental work activities. (Tr. 13).

A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "'acts as a filter' in that the 'finding of any severe impairment ... is enough to satisfy the requirement of step two' and allow the ALJ to proceed to step three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). As a result, even if the ALJ should have found Tackett's mental impairments severe at step two, any error is harmless because the ALJ determined that Tackett's COPD, back pain, and neck pain were severe, which allowed the ALJ to move to step three. *See id.*

Tackett's arguments that the purported error affected the ALJ's RFC determination and the resulting hypothetical to the vocational expert also fail because the ALJ considered all of Tackett's symptoms and impairments, including her mental impairments in combination in determining her RFC. *Id.* "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite her impairments." *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013) (citing *Lewis v. Callah*an, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

The ALJ specifically stated he considered the entire record, including "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 14). In considering the four broad areas of mental health, the ALJ cited—among other records—LCSW Hughes's evaluation, psychologist Cheryl Kasprzak's Disability Evaluation, and physician James Owen's Disability Evaluation. (Tr. 13-14, 277-287, 445-452, 454-464). After consideration of the evidence, the ALJ determined Tackett had mild limitations in remembering or applying information, and in her ability to concentrate, persist, or maintain pace. In addition, the ALJ determined Tackett had no more than mild limitations in interacting with others and her ability to adapt or manage herself. As a result, the ALJ concluded Tackett's mental impairments do not cause more than minimal limitations in Tackett's ability to perform basic mental-work activities. (Tr. 13).

Importantly, LCSW Hughes is not an acceptable medical source and in her evaluations, she does not offer any opinions as to Tackett's functional limitations. (Tr. 262-273, 277-288). While Dr. Kasprzak found a strong suspicion that Tackett was feigning cognitive, affective, intellectual deficiency, and neurological impairments due to Tackett's consistent failure to correctly answer simple items or endorse appropriate items,[19] Dr. Kasprzak did opine as to Tackett's functional

---

[19] While Tackett takes issue with Dr. Kasprzak's use of the SIMS test to detect malingering, other

limitations. (Tr. 448, 450-452). Of the domains she was able to assess, Dr. Kasprzak found Tackett had no limitations in understanding and remembering simple instructions; carrying out simple instructions; the ability to make judgments or simple work-related decisions; or interacting appropriately with the public, supervisors, and co-workers. (Tr. 450-451).

The ALJ also considered the opinions of John Thibodeau Ph.D., Maryann Warry, Psy.D, state agency consultants. (Tr. 19). After review of the medical records, Drs. Thibodeau and Wharry found Tackett to have mild restrictions in: activities of daily living; difficulties in maintaining social functions; and difficulties in maintaining concentration, persistence or pace. (Tr. 82, 109). These reports are consistent with Dr. Kasprzak's evaluation. The ALJ considered all of Tackett's symptoms and impairments in determining Tackett's RFC and made specific and well-articulated findings. *See Ball*, 714 F. App'x at 993 (citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) ("stating that the ALJ must 'make specific and well-articulated findings as to the effect of the combination of impairments' in determining residual functional capacity.")).

The ALJ also considered Tackett's testimony related to her mental limitations and daily activities. Tackett drove to the hearing, and acknowledged that she can

---

components of the evaluation to which Tackett does not object supplied similar indications.

read, write, and do basic math. On a routine basis, she prepares meals, cleans the house, watches the news, checks the mail, goes to the store (if needed), takes her husband to doctor's appointments, washes clothes (once a week), hangs clothes on a clothesline, mows the grass (when needed), watches her granddaughter (sometimes), and paints rocks as a hobby. (Tr. 15-16). Tackett also uses a computer at the library and, in 2016, she was self-employed and earned over $9,000.00 from selling items on Craigslist and cleaned a house or two. (Tr. 60). Indeed, Dr. Owen—whose opinions Tackett argues the ALJ should have afforded more weight—found Tackett able to shop, travel without a companion, use public transportations, prepare a simple meal, take care of her personal hygiene, and sort, handle, or use paper files. (Tr. 465; Doc. 21, pp. 34-36).

Lastly, the Court finds the ALJ's reliance on the testimony of the vocational expert is supported by substantial evidence. For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). Conversely, an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). Here, the ALJ posed a hypothetical

to the vocational expert that included all of the limitations supported by the record. Thus, there was no error at step two of the sequential evaluation, no error in the formulation of the RFC, and no error in the hypothetical posed to the vocational expert.

### E.   Tackett's RFC contentions concerning a sit/stand option and light work

Based on Dr. Owen's opinions, Tackett cites *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 869 (11th Cir. 2012), and claims the ALJ erred by not including a sit/stand option in the RFC.[23]  To be clear, Dr. Owen did not specifically include a requirement for a sit/stand option. Instead, Tackett asserts a sit/stand option would be necessary based on Dr. Owen's opinion that Tackett could sit for 1 hour at a time, stand for 20 minutes, and walk for 20 minutes. (Doc. 21, p. 44). While Tackett cites *Watkins*, it is distinguishable. In *Watkins*, the Eleventh Circuit reversed and remanded the action because even though the ALJ gave *great weight* to a physician's opinion, he did not include the physician's recommended sit/stand option in the plaintiff's RFC. *Watkins*, 457 F. App'x at 871. In contrast, the ALJ in this matter

---

[23]  As stated above, "[t]he claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite her impairments." *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

discounted Dr. Owen's opinions and gave them only *partial* weight, and his decision

to do so is—as discussed above—was supported by substantial evidence. (Tr. 19).

As the ALJ found, Dr. Owen's report is not consistent with his examination.

(Tr. 19). Dr. Owen observed Tackett was able to get on and off the examination table

and in and out of the room without difficulty. Tackett could heel and toe walk, and

the Romberg, Tandem, and piriformis were all negative. (Tr. 455). In addition, Dr.

Owen found Tackett able to shop, travel without assistance, ambulate without

assistive device, walk a block, use public transportation, prepare simple meals, and

take care of herself. (Tr. 465). Further, Tackett's ranges of motion were minimally

affected. (Tr. 455). In addition, as the ALJ reported, Michael Rosenberg, M.D.

conducted a consultative examination on June 30, 2016, and found Tackett's pain

was intermittent and not affected by walking or sitting. (Tr. 17). He also found no

scoliosis, kyphosis, or abnormality in the thoracic spine and no significant pain with

range of motion of the lumbosacral spine or neck. (Tr. 17).[24] As a result, the ALJ

was not required to include a limitation in the RFC, such as a sit/stand option, that

he did not find supported by substantial evidence in the record.

Likewise, Tackett challenges the ALJ's determination in the RFC that she

could perform light work and argues the ALJ should have found her capable of

---

[24] And at the hearing, Tackett testified to not having any back injury and that she did "[n]ot really" have any neck pain. (Tr. 65-66).

performing only sedentary work, relying solely on Dr. Owen's opinion. (Doc. 21, p. 46).[25] Tackett again raises the argument that if the ALJ had adopted Dr. Owen's opinion on Tackett's limitations about sitting, standing, and walking, Tackett would have been limited to sedentary work. (*Id.*, pp. 46-47). For the same reasons the Court found the ALJ's decision not to include a sit/stand option is supported by substantial evidence so too does it find the ALJ's decision finding Tackett capable of performing light work supported by substantial evidence. The ALJ articulated clear, specific reasons to give partial weight to Dr. Owen's opinion, including that his opinions were not consistent with his evaluation. Thus, the ALJ was under no obligation to adopt Dr. Owen's limitations.

In further support, the ALJ gave considerable weight to the opinion of Frank Walker, M.D., a non-examining physician. Dr. Walker opined Tackett was capable of performing light work with limitations. (Tr. 18). And again, as discussed repeatedly above, Tackett's daily activities, such as mowing, doing laundry, cooking, cleaning, and driving are further support for her ability to perform light work. (Tr. 17-18); *see Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 872

---

[25] Tackett couches the alleged error that Tackett was able to perform light work as "an attempt to circumvent the grids." (Doc. 21, p. 46). If a claimant is not capable of returning to her past relevant work, then at step five, an ALJ will determine whether the claimant has the ability to adjust to other work in the national economy by: (1) applying the GRIDS; or (2) by the use of a vocational expert. *Norton v. Comm'r of Soc. Sec.*, 607 F. App'x 913, 914 (11th Cir. 2015). But in this case, at step four, the ALJ found Tackett was capable of returning to her past relevant work as a cashier and server. (Tr. 19). As a result, the ALJ ended the analysis at step four and was not required to apply the GRIDS.

(11th Cir. 2016) (finding evidence of a plaintiff's daily activities, such as cooking, doing household chores, and working around the property can support the capacity for light work). As a result, the Court finds substantial evidence supports the ALJ's determination that Tackett is capable of performing light work with certain limitations.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

It is **RESPECTFULLY RECOMMENDED** the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in Defendant's favor.

Reported in Fort Myers, Florida on February 22, 2021.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**